## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VISLESH MACHERLA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.  2:20-cv-002648 |
| | ) | |
| NORTH PENN IMPORTS d/b/a | ) | ELECTRONICALLY FILED |
| NORTH PENN MAZDA; | ) | |
| | ) | |
| JOHNATHAN SELL; | ) | |
| | ) | |
| MAZDA NORTH AMERICAN | ) | |
| OPERATIONS; and | ) | |
| | ) | |
| WELLS FARGO DEALER | ) | |
| SERVICES | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Mazda Motor of America, Inc., d/b/a Mazda North American Operations (MNAO), one of the defendants, submits the following Brief in Support of its Motion to Dismiss.

## I.    Factual Background

Plaintiff, Vislesh Macherla, commenced this action in the Court of Common Pleas of Philadelphia County, Pennsylvania, on May 5, 2020.  Defendant, Mazda Motor of America, Inc., d/b/a Mazda North American Operations (MNAO), and defendant Wells Fargo Dealer Services (Wells Fargo) timely removed the action to

this Court based on diversity of citizenship 28 U.S.C. §1332(a), prior to service of the Complaint upon the Pennsylvania defendants, North Penn Imports and Johnathan Sell.  *See,* 28 U.S.C. §1442; *Encompass Insurance Co., v. Stone Mansion Restaurant Inc.,* 902 F.3d 147 (3d Cir. 2018).

Plaintiff's eight count, 152 paragraph complaint, alleges a multitude of wrongs allegedly perpetrated on the plaintiff, but boils down to this:  On January 18, 2016, plaintiff purchased a used 2015 Mazda 6 from North Penn Imports.  Complt., ¶9, and Exhibit 1 thereto.  At the time of purchase, plaintiff received a copy of a Carfax and an AutoCheck report (prepared by independent third parties) showing no record of reported accidents.  Complt., ¶12, and Exhibits 4-5 thereto.  Plaintiff also received a document entitled "Mazda Certified Pre-Owned 150-Point Vehicle Inspection" dated December 15, 2015, bearing the signatures of North Penn's Manager and Certified Technician.  Complt., ¶11, and Exhibit 3 thereto.  That report also allegedly indicated that the vehicle had not been in any accidents or damaged. *Id*.

According to the Complaint, the vehicle suffered malfunctions from the time of purchase including alignment, insecure front license plate, loose front bumper, inoperable front headlamps and fog lights, loose molding, throttle body, dead battery, and map light malfunction.  Complt., ¶14.  Plaintiff also noticed that the paint was chipping and peeling.  Complt., ¶15.  Plaintiff took the vehicle to an

unidentified body shop where he allegedly was informed of indications that the vehicle had been in a severe accident.  Complt., ¶16.  Plaintiff claims that if he had known that the vehicle had been involved in an accident, he would not have purchased it.  Complt., ¶27.

From this relatively simple fact pattern, plaintiff concocts an eight count Complaint alleging Fraud (Count I), Breach of Contract (Count II), Negligence (Count III), Negligent Misrepresentation (Count IV), Breach of Express and Implied Warranties (Count V), Violations of the Professions and Occupations Act, *63 P.S. §818.19* (Count VI), Civil Conspiracy (Count VII), and Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), *73 Pa.C.S. §201-1, et seq*. (Count VIII).  Plaintiff asserts each count against "all Defendants," with no regard for their obviously separate roles, in the underlying transaction.

With respect to MNAO, the Complaint is significant for what it does *not* say.  It does not say that MNAO was a party to the sales agreement (the agreement in its face shows it was not).  It does not allege facts to show that North Penn or its employee, Sell, acted as its agents in connection with the sale of a used vehicle.  It does not say that MNAO made any representations, extended any warranties, or was even remotely involved in transferring the title or arranging financing (because it did not and was not).  It does not say that anyone from MNAO ever communicated with

3

the plaintiff or ever laid eyes on the plaintiff or the vehicle (because no one did).  It does not say that MNAO was involved in the dealer's acquisition of the vehicle[1] or the inspection performed by the dealer.  It does not say that MNAO ever communicated with the plaintiff or did anything to facilitate plaintiff's purchase of the vehicle.  There is no allegation that MNAO was even aware that the vehicle was on the dealer's lot, let alone that MNAO advertised it for sale.

For the reasons that follow, the Complaint must be dismissed as to MNAO.

## II.     Argument

### A.     Standard of Review.

In deciding a *Rule 12(b)(6)* motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] The AutoCheck report, attached as Exhibit 4 to the Complaint indicates that the vehicle was registered at an auto auction on December 17, 2015, and re-registered as a dealer vehicle on December 21, 2015.

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)).

It is incumbent upon a plaintiff to plead with clarity. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515 F.3d at 233 (internal quotations marks and citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original), quoting *Iqbal*, 556 U.S. at 675. "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.,* quoting *Iqbal,* 556 U.S. at 679. Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations in original), quoting *Iqbal*, 556 U.S. at 679. *Purnell v. Radnor Twp. Sch. Dist.,* No. 19-612, 2019 U.S. Dist. LEXIS 63723, *7-8 (E.D. Pa. April 12, 2019).

Pennsylvania law applies to this diversity action.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188(1938); *Wayne Moving & Storage of New Jersey, Inc. v. Sch. Dist. of Philadelphia*, 625 F.3d 148, 154 (3d Cir. 2010).

### B.   Counts I through VII are barred by their respective statutes of limitation.

Although claims under the Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count VIII) are subject to a 6-year statute of limitations, *Morse v. Fisher Asset Management, LLC*, 2019 Pa.Super. 78, 206 A.3d 521, 526 (Pa.Super. 2019) (citing *42 Pa.C.S §5527(6)*), Counts I through VII are barred by their applicable two or four-year statutes of limitation.

Under *Fed. R. Civ. P. 8(c)*, statutes of limitation are affirmative defenses on which the defendant bears the burden of proof at trial.  *Bradford-White Corp. v. Ernst & Whinney,* 872 F.2d 1153, 1161 (3d Cir.1989)*; Estate of Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*, No. 4:12-CV-0531, 2012 U.S. Dist. LEXIS 103639, 2012 WL 3011728, at *1 (M.D. Pa. May 25, 2012).  However, the limitations defense may be raised on a motion under *Rule 12(b)(6)*, if "the time alleged *in the statement of a claim* shows that the cause of action has not been brought within the statute of limitations."  *Hanna v. United States Veterans' Administration Hospital*, 514 F.2d 1092, 1094 (3d Cir. 1975); *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978).  That is the case here.

Under Pennsylvania law, a two-year statute of limitations applies to tort actions. *42 Pa. C.S. §5524*, which include fraud, *Posyton v. Kutztown Area Transp. Serv.*, *Inc.,* No. 16-cv-3686, 2016 U.S. Dist. LEXIS 104563, 2016 WL 4193850, at *6 (E.D. Pa. Aug. 9, 2016), breach of fiduciary duty, *Melley v. Pioneer Bank, N.A.,* 834 A.2d 1191 (Pa.Super. 2003), *appeal denied,* 577 Pa. 723, 847 A.2d 1287 (Pa. 2004), and claims based on negligence or negligent misrepresentation. *42 Pa. C.S. §5524(7); Silverstein v. Percudani,* No. 3:04-cv-1262, 2005 U.S. Dist. LEXIS 10005, at *1 (M.D. Pa. May 26, 2005).

Pennsylvania imposes a four-year statute of limitations for breach of contract claims. *42 Pa. C.S. § 5525*. That statute of limitations begins to run "from the time the action accrues." *Ogrizovich v. CUNA Mut. Grp.*, No. 2:09-cv-371, 2015 U.S. Dist. LEXIS 183283, 2015 WL 12778403, at *5 (W.D. Pa. Feb. 13, 2015) (citing *S.T. Hudson Eng'rs, Inc. v. Camden Hotel Dev. Assocs.*, 747 A.2d 931, 934 (Pa.Super. 2000)).

Pennsylvania applies the discovery rule to both contract and tort causes of action. *Melley v. Pioneer Bank, N.A.,* 834 A.2d 1191 (Pa.Super. 2003), *appeal denied,* 577 Pa. 723, 847 A.2d 1287 (Pa. 2004). The rule "toll[s] the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 859 (Pa. 2005). The applicable statute of

limitations is tolled until such time as the aggrieved party "knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991).  The limitations period begins to run when the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate to determine whether he is entitled to redress."

The Pennsylvania Uniform Commercial Code also requires breach of contract actions to be filed within four years of the accrual of a cause of action.  *13 Pa. C.S. §2725(a)*.  Generally, a breach of warranty action accrues upon tender of delivery irrespective of the aggrieved party's lack of knowledge of the breach.  §2725(a). *Total Containment, Inc. v. Dayco Prods., Inc.,* No. 1997-cv-6013, 2001 U.S. Dist. LEXIS 5971, at *1 (E.D. Pa. May 3, 2001); *Floyd v. Brown & Williamson Tobacco Corp.,* 159 F.Supp.2d 823, 826 (E.D. Pa. 2001).  However, where a warranty explicitly extends to future performance and discovery of the breach cannot be made before the time of that performance, the statute of limitations is tolled until the buyer knew or had reason to know of the defect.  *Id.*  Implied warranties of merchantability and fitness for a particular purpose cannot explicitly extend to future performance.  *Floyd,* 159 F.Supp.2d at 826.

Instantly, the complaint on its face establishes that plaintiff was put on notice that the vehicle was not as it was represented to be at the time he took delivery.

Plaintiff purchased the vehicle on January 18, 2016.  <u>Complt</u>., ¶9.  According to plaintiff, the vehicle suffered malfunctions **from the time of purchase**, including alignment, insecure front license plate, loose front bumper, inoperable front headlamps and fog lights, loose molding, throttle body, dead battery, and map light malfunction.  <u>Complt</u>., ¶14.  Plaintiff also noticed that the paint was chipping and peeling.  <u>Complt</u>., ¶15.  Plaintiff took the vehicle to an unidentified body shop where he allegedly was informed of indications that the vehicle had been in a severe accident.  <u>Complt</u>., ¶16.  Plaintiff likewise knew or should have known that the dealer did not transfer title to the vehicle until two weeks after the sale, thereby allegedly rendering the transfer, financing disclosures, and odometer statement unlawful, false, and inaccurate.  <u>Complt</u>., ¶25-28.  Despite this knowledge, plaintiff chose to sit on his rights for more than four years, until May 5, 2020, when he filed the present Complaint.

Counts I through VII must be dismissed under the applicable statute of limitations.

### C.   Plaintiff's allegations of the existence of a fiduciary duty are without merit.

Without specifying the particular claims, if any, to which these allegations apply, plaintiff claims that "the Defendants" stood in a fiduciary relationship with the plaintiff, allegedly because plaintiff had no specialized knowledge or experience in the automotive industry, and "the Defendants" "promised to take good care of the

Plaintiff."  Supposedly, by virtue of their unequal sophistication and expertise, defendants had the means to exercise undue influence over the plaintiff.  Complt., ¶¶33-41.  Allegedly, "the Defendants" exploited their so-called fiduciary relationship in some vague manner by "deceiving the Plaintiff regarding the party's respective rights and duties under the [sales agreement] and concealing the nature of Defendant's conduct (misconduct)."  Complt., ¶41.

The party asserting a confidential relationship bears the burden of proving its existence.  *Wisniski v. Brown & Brown Ins. Co.*, 2006 Pa.Super. 216, 906 A.2d 571, 579 (Pa.Super. 2006).  Where the relationship "between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain."  *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410, 412 (Pa. 1922).

A claim for breach of fiduciary duty requires proof of :  (1) the existence of a confidential or fiduciary relationship between the plaintiff and defendant; (2) the defendant negligently or intentionally failing to act in good faith and *solely* for the benefit of the plaintiff in all matters for which he or she was employed; (3) the plaintiff suffered injury; and (4) the defendants' failure to act *solely* for the plaintiff's benefit was a real factor in bringing about the plaintiff's injury. (emphasis added)  *Lux Global Label Co., LLC v. Shacklett,* No. 18-5061, 2019 U.S. Dist. LEXIS 129103 (E.D. Pa. July 31, 2019), citing *Baker v. Family Credit*

*Counseling Corp.*, 440 F.Supp.2d 392, 414-15 (E.D. Pa. 2006).  Plaintiff's vague

allegations do not support the existence of a fiduciary relationship or a claim for

breach of fiduciary duty with respect to any of the subsequent counts of the

Complaint.

First and foremost, plaintiff fails to allege a confidential or special

relationship, or for that matter any relationship at all, between the plaintiff and

MNAO.  Under Pennsylvania law, a fiduciary relationship arises where "one person

has reposed a special confidence in another to the extent that the parties do not deal

with each other on equal terms, because of the over-mastering dominance on one

side or weakness, dependence, or justifiable trust on the other."  *Becker v. Chicago*

*Title Co.,* No. 03-2292, 2004 U.S. Dist. LEXIS 1988 (E.D. Pa. Feb. 4, 2004).  It

generally involves a situation where, by virtue of the respective strength and

weakness of the parties, one has the power to take advantage of or exercise undue

influence over the other.  *eToll, Inc. v. Elias/Savion Adver.,* 811 A.2d. 10, 13-14

(Pa.Super. 2002), *citing  Estate of Evasew*, 526 Pa. 98, 584 A.2d 910, 913 (Pa.

1990); *Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d

1277, 1283 (Pa. 1990) (special relationship exists between attorney and client);

*Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412, 418 (Pa. 1981) (special relationship

exists between 86 year old widow with no formal education and her sole business

counselor); *Estate of Thomas*, 463 Pa. 284, 344 A.2d 834, 836  (Pa. 1975) (special

relationship between attorney-scrivener and testator); *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659, 662 (Pa. 1966) (special relationship between widow and sons upon whom she relied to manage her property); *Leedom v. Palmer*, 274 Pa. 22, 117 A. 410, 412 (Pa. 1922) (special relationship between guardian and ward). *See also, In re Johnson*, 292 B.R. 821, 828 (Bankr. E.D. Pa. 2003) (finding that Pennsylvania law does not recognize a fiduciary relationship between an insurer and an insured), *cited in Becker,* 2004 U.S. Dist. LEXIS 1988 at *45.

Plaintiff does not even allege facts to establish a fiduciary relationship with the dealer, let alone MNAO. The mere fact that an automobile dealer possesses superior knowledge and expertise in the sale of vehicles does not give rise to a fiduciary relationship. Otherwise, a fiduciary relationship would arise whenever one party had any marginally greater level of skill and expertise in a particular area than another party. *eToll,* 811 A.2d at 23. Rather, the critical question is whether the relationship goes *beyond* mere reliance on superior skill, and into a relationship characterized by "overmastering influence" on one side or "weakness, dependence, or trust, justifiably reposed" on the other side. *Id., citing Basile v. H&R Block*, 2001 Pa.Super. 136, 777 A.2d 95, 101 (Pa.Super. 2001) (confidential relationship existed between client and tax preparer). A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior

party's advice and seeks no other counsel, so as to give rise to a potential abuse of power. *Basile,* 777 A.2d at 102.

A dealer's vague promise to "take good care" of a potential customer, does not transform an otherwise ordinary business transaction into a fiduciary relationship. *eToll*, 811A.2d at 23[2]. The mere fact that an automobile is a major purchase for the average consumer, Complt., ¶¶38-39, does not make every automobile dealer and their sales staff fiduciaries with respect to what reasonable consumers would regard as an arm's-length transaction.

There is nothing in the Complaint to indicate that the plaintiff was so aged, infirm, or lacking in skill or competence as to give rise to the possibility of an abuse of power.  There are no facts offered to support the inference that the plaintiff was so easily influenced as to fall under the dealer's spell by the mere suggestion that the dealer would take care of him.  To the contrary, the complaint establishes that plaintiff purchased the vehicle for personal use, and therefore presumably was a licensed driver capable of operating a vehicle and deciding for himself which vehicle best suited his needs.  The Complaint does not suggest otherwise.

---

[2]  See also, *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1101, 1106-07 (10th Cir. 2009), holding held that it was not reasonable for the counterclaim plaintiff to rely on the bank's advertising slogan "So . . . you're about to buy a new home, or build one.  You concentrate on your dream.  We'll take care of everything else" because it was puffery that "no reasonable person would rely on as assertions of particular facts."

Nothing in the Complaint even remotely suggests the existence of a fiduciary relationship, or even a single communication between the plaintiff and MNAO. Accordingly, paragraphs 33-41 should be stricken from the Complaint.

**D.    Plaintiff's fraud allegations (Count I) must be dismissed.**

Count I of the Complaint alleges fraud against "the Defendants," again without regard to what representations or omissions, if any, they made.  As such, the Complaint fails to comply with Fed. R. Civ. Proc. 8(b), which requires that when alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  In any case, the statements of fact as to MNAO's alleged role in the transaction do not amount to actionable fraud.

The elements of common law fraud are:  (1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may either be actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage as a proximate result.  *Dawson v. Dovenmuehle Mortg., Inc*., 214 F.R.D. 196 (E.D. Pa. 2003); *Bortz v. Noon,* 556 Pa. 489, 729 A.2d 555, 560 (1999).

While the present Complaint is replete with conclusory and inflammatory allegations, i.e., the "CPO [Certified Preowned Vehicle] program is a scam used to

increase vehicle sale prices and to obtain increased profits," Complt., ¶ 87, nowhere in the Complaint does it state or suggest that MNAO made *any* representations regarding the vehicle involved in this case.  As stated in response to plaintiff's breach of contract claim, MNAO was not a party to the sale of the vehicle, and there is no allegation that MNAO did anything to conceal its alleged defects, if any. Instead, plaintiff focuses exclusively on the alleged promotion and sale of used vehicles as being "Mazda Certified," to induce customers to purchase vehicles at an increased price.  E.g., Complt., ¶ 56.  MNAO, however, did not certify the vehicle as meeting its standards.  To the contrary, the document entitled "Mazda Certified Pre-Owned 150-Point Vehicle Inspection" dated December 15, 2015, bears the signatures of North Penn's Manager and its Certified Technician.  Complt., ¶11, and Exhibit 3 thereto.  If there was deception in the completion of the Certification, MNAO is not alleged to have been a party to it.

At worst, the Complaint alleges that MNAO failed to oversee its dealers with respect to the CPO program.  Complt., ¶11 88-91.  Mere lack of oversight does not amount to an affirmative misrepresentation or intentional concealment.  Nothing in the complaint even remotely suggests that MNAO, itself, made any representations, fraudulent or otherwise, concerning this vehicle.

Silence can constitute fraud only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar

relationship of trust and confidence.  *Mest v Cabot Corp,* 449 F.3d 502, 517 (3d.

Cir. 2006), *citing Chiarella v. United States*, 445 U.S. 222, 227-28, 100 S. Ct. 1108,

63 L. Ed. 2d 348 (1980); *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1236

(Pa.Super. 1992); *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188, 192 (Pa.Super.

1989).  For the reasons previously stated, no such relationship can be found to exist

between plaintiff and MNAO on the facts alleged.

Count I of the Complaint must be dismissed.

### E.    Count II must be dismissed because MNAO was not a party to the contract.

"It is fundamental contact law that one cannot be liable for breach of contract

unless one is a party to that contract."  *Electron Energy Corp v. Short,* 597 A.2d

175,177 (Pa.Super. 1974), *aff'd,* 533 Pa. 66, 618 A.2d 395 (Pa. 1993).  The Buyer's

Offer (Exhibit 1 to the Complaint) on its face establishes that MNAO was not a

party to it.  Neither was MNAO a party to vehicle loan. Complt., Ex. 2.

Accordingly, plaintiff's breach of contract claim (Count II) fails as a matter of law.

### F.    The complaint fails to state a cause of action for negligent misrepresentation.

Once again, Plaintiff makes the blanket allegation that "the Defendants"

misrepresented the condition of the vehicle and the terms of the sale and financing,

without any apparent attempt to identify what information was supplied by whom.

As such, the Complaint fails to state a claim for negligent misrepresentation as to

MNAO.

The tort of negligent misrepresentation is governed by the *Restatement (Second) of Torts* § 552, which states, in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1238 (Pa.Super. 1992).

The Complaint fails to state a claim for negligent misrepresentation against MNAO, for at least two reasons.  First, the complaint fails to allege facts to show that MNAO had a pecuniary interest in the transaction.  As the sales contract makes clear, MNAO was not a party to the transaction.  Second, the Complaint fails to allege that MNAO provided any information whatsoever in connection with the sale of this used vehicle.  It does not allege that MNAO prepared or supplied the Carfax or the AutoCheck reports that indicated that the vehicle had no prior reported accidents.  The Mazda Certified Inspection Checklist speaks for itself that it was completed, signed, and supplied by the dealer's representatives. In short, the Complaint fails to allege that MNAO made any statements on which the Plaintiff could have relied.

Count IV must be dismissed.

### G.     The complaint fails to allege the existence of any warranties by MNAO.

Count V of the Complaint alleges that "the Defendants," without specifying who, expressly or impliedly warranted the vehicle.  Although the Buyer Order (Exhibit 1 to the complaint) indicates, by checking the box, that the vehicle came with a "Used Car Limited Warranty," the terms, conditions, and limitations of that warranty are nowhere to be found.  Rather, it appears that plaintiff is content to conjure into existence some vague warranty that he can then claim to have been breached.

In order to establish a breach of express warranty under Pennsylvania law, the plaintiff must demonstrate that there was some form of promise or affirmative statement made.  *13 Pa. C.S. § 2313*; *Delaney v Stryker Orthopaedics*, No. 08-03210, 2009 U.S. Dist. LEXIS 16865 (D. N.J. March 5, 2009) (applying Pa. and N.J. law).  Plaintiff's Complaint does not allege any promise, either verbal or written by MNAO nor give any hint as to what exactly was promised.  "As the Supreme Court explained in *Bell Atlantic v. Twombly*, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929. *Delaney,* 2009 U.S. Dist. LEXIS 16865 at *13-14.

To recover for a breach of implied warranty of merchantability in Pennsylvania, a plaintiff must show that the seller was a merchant as defined by the Uniform Commercial Code ("UCC") and the goods were not merchantable at the time of the sale. *13 Pa. C.S.A. §2314.*  MNAO was not the seller of the vehicle in question.  The vehicle was sold by the dealer, and in any event the sales agreement disclaims all implied warranties of merchantability and fitness for particular purpose.

Conspicuous disclaimers are enforceable under Pennsylvania law. *13 Pa. C.S. §2316(b).*  Conspicuousness, which is a question of law for the court, is decided by whether a reasonable person against whom the modification or exclusion is to operate ought to have noticed it. *Hornberger v. Gen. Motors Corp.,* 929 F.Supp. 884 (E.D. Pa.1996); *Strickler v. Peterbilt Motors Co.,* No. Civ. A. 04-3628, 2005 U.S. Dist. LEXIS 10231, 2005 WL 1266674 (E.D. Pa. May 27, 2005).  Here, the disclaimer appears in all capital letters on the second page of a two-page sales agreement.  Thus, even if MNAO was a party to the sales agreement, which it was not, the agreement effectively disclaims all implied warranties.

Count V must be dismissed.

**H.    The Professions and Occupations Act does not apply.**

In Count VI, plaintiff alleges that all of "the Defendants" somehow violated the Professions and Occupations Act, *63 P.S. §818.19,* so as to entitle him to the

civil remedies under *63 P.S. §818.29*.  The difficulty with this argument is that

§818.29 (renumbered effective October 24, 2019 as §329) does not provide a civil

remedy to vehicle purchasers.

Plaintiff accurately quotes §329 as follows:

> Notwithstanding the terms, provisions or conditions of any
> agreement or franchise or other terms or provisions of any
> novation, waiver or other written instrument, any person who
> is or may be injured by a violation of a provision of this act of
> any party to a franchise who is so injured in his business or
> property by a violation of a provision of this act relating to that
> franchise, or any person so injured because he refuses to
> accede to a proposal for an arrangement which, if
> consummated, would be in violation of this act, may bring an
> action for damages and equitable relief, including injunctive
> relief, in any court of competent jurisdiction.

*2018 Pa. ALS 134, 2018 Pa. Laws 134, 2017 Pa. SB 764, 2018 Pa. ALS 134, 2018*

*Pa. Laws 134, 2017 Pa. SB 764.*

The Pennsylvania Board of Vehicles Act (Act),  *63 P.S. §§818.16*,

*818.12(b)(3)*, is a comprehensive statute governing the relationship between

automobile manufacturers and their franchise dealers.  *Rosado v Ford Motor Co.,*

337 F.3d 291,293 (3d. Cir. 2003).  It simply does not govern the sale of a vehicle

between an auto dealer and its customer.

Count VI, accordingly, must be dismissed.

## I.  Plaintiff's civil conspiracy claim fails as a matter of law.

Pennsylvania law provides that the elements of a civil conspiracy are:  "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Bristol Township v. Independence Blue Cross*, 2001 U.S. Dist. LEXIS 16594 (E.D. Pa. October 12, 2001).  An essential element of proof for conspiracy is malice or intent to injure. *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa.Super. 1997).  This element of malice will only be found when the sole purpose of the conspiracy is to cause harm to the party who has been injured. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 472 (Pa. 1979).  In addition, where the facts show that a person acted to advance his own business interests, and not solely to injure the party injured, those facts negate any alleged intent to injure. *Id.* "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself actionable conspiracy." *Id.*, 412 A.2d at 473, *citing Fife v Great Atlantic and Pacific Tea Co.,* 356 Pa. 265, 267, 52 A.2d 24, 39 (Pa. 1947); *Morris v Halford,* 352 Pa. 138, 42 A.2d 411 (Pa. 1945).

Instantly, there is no allegation that MNAO entered into an agreement or combination with the dealer to do anything at all, let alone supposedly passing off a damaged vehicle.  If anything, the complaint alleges that MNAO did the exact

opposite by *not* supervising or otherwise becoming actively involved in the dealer's operations.  Apart from plaintiff's vague generalities, the complaint fails to allege that MNAO even knew what the dealer allegedly was doing. Absent an agreement to perform an illegal act, or a legal act by illegal means, there is no conspiracy.

Moreover, failing to do something, such as "refusing or failing to demand that each other terminate their misconduct," Complt., ¶146, is not an overt act in furtherance of a conspiracy.  By definition, "an overt act is an *act* by any member of the conspiracy that would serve to further the goal of the conspiracy."  *Clymer v. Combine*, No. 03-3563, 2005 U.S. Dist. LEXIS 30549, at *25 (E.D. Pa. Nov. 30, 2005), *citing PSSCJI 15.2502B* (emphasis added).  MNAO was not a party to the sale, and its alleged failure to prevent the dealer from allegedly failing to disclose the condition of the vehicle is not evidence of the existence of a conspiracy.

Count VII of the Complaint must be dismissed.

### J.      MNAO is not liable under the Consumer Protection Act or the Motor Vehicle Dealer Regulations.

Count VIII of the complaint appears to be a mashup of claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), *73 Pa.C.S. §201-1, et seq.,* and the Automotive Industry Trade Practices regulations (AITP), *37 Pa. Code §§301.1-305.4.*  The Complaint fails to state any cause of action against MNAO under either.

The UTPCPL provides that:

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act [*73 P.S. § 201.2(4)*], may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2; *Abraham v. Ocwen Loan Servicing, LLC,* 321 F.R.D. 125, 157 n.13 (E.D. Pa. 2017).  The elements for UTPCPL claims include:  "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss."  *Hall v. Equifax Info. Servs. LLC*, No. CV 15-2938, 204 F.Supp.3d 807, 2016 U.S. Dist. LEXIS 117100, 2016 WL 4538898, at *3 (E.D. Pa. Aug. 31, 2016) (quoting *Slapikas v. First American Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014)).

As with plaintiff's fraud claim, the Complaint at worst suggests that MNAO failed to oversee the dealer's certification program.  Nowhere in the Complaint does it state or suggest that MNAO made *any* representations regarding the vehicle involved in this case.  MNAO was neither a party to the sale of the vehicle, nor did anything to conceal the alleged defects, if any.  It did not certify the vehicle as

meeting its standards.  To the contrary, as previously stated, the document entitled

"Mazda Certified Pre-Owned 150-Point Vehicle Inspection" dated December 15,

2015, bears the signatures of North Penn's Manager and its Certified Technician.

Complt., ¶11, and Exhibit 3 thereto.  Plaintiff does not claim to have spoken directly

to any MNAO representative, that any MNAO representative ever laid eyes on the

vehicle, or that any MNAO representative was even aware that this used vehicle had

even been acquired or sold by the dealer.

Plaintiff's reference to the Automotive Industry Trade Practices regulations

adds nothing to the mix.  Again, MNAO was not a party to the sale, did not

advertise the vehicle for sale, and made no representations whatsoever regarding the

vehicle.

Count VIII must be dismissed as to MNAO.

**III    Conclusion.**

For the reasons set forth herein, MNAO requests that the Complaint be

dismissed.

Respectfully submitted,


By: /s/ William James Rogers
    Steven B. Kantrowitz, Esquire
    PA I.D. 25737

    THOMSON, RHODES & COWIE, P.C.
    1055 Virginia Drive
    Fort Washington, PA  19034
    (215) 496-9400

William James Rogers, Esquire
PA ID 38990

THOMSON, RHODES & COWIE, P.C.
1010 Two Chatham Center
Pittsburgh, PA  15219
(412) 232-3400

Attorneys for Defendant, Mazda Motor
of America, Inc., d/b/a Mazda North
American Operations

W:\SBK\80033 Macherla\Federal Pleadings\brief in support of motion to dismiss.docx